## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHEM-TROL, INC.,

                *Plaintiff*,

vs.

                Case No. 09-2024-EFM

LYLE A. CHRISTENSEN and
MIDWEST SPRAY TEAM & SALES, INC.,

                *Defendants.*

## MEMORANDUM AND ORDER

This case comes before the Court on February 2, 2009, for hearing on Defendant Midwest Spray Team & Sales, Inc.'s ("Midwest") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 10), and Defendant Midwest and Defendant Lyle A. Christensen's ("Christensen") joint Motion for Change of Venue (Doc. 14). Plaintiff appears by its owner, Joseph A. White, and by counsel, Scott C. Nehrbass. Defendants appear in person and by counsel, David Laird Charles. The Court, upon examining its files and hearing the evidence presented, DENIES said motions.

### I. Background

This litigation pertains to a Contract of Employment ("Contract") entered into between

Plaintiff and Defendant Christensen on December 17, 1987.[1]  Plaintiff is a Kansas corporation, with its principal place of business in Kansas City, Kansas.  The Contract contained a non-compete provision that precludes Defendant Christensen from going into business, or becoming employed with another entity in which its business was such as to be the same or similar to Plaintiff's business, which is to provide vegetation control and mowing services.  The non-compete provision further prohibits Defendant Christensen from soliciting any customers of Plaintiff, revealing any information concerning Plaintiff's method of operation or other business affairs, and, directly or indirectly diverting or influencing any business or customers away from Plaintiff.  The non-compete provision covered a 250 mile radius of Hamlin, Iowa, for a period of two years after termination of employment, with or without cause.

Plaintiff terminated Defendant Christensen's employment on August 22, 2008. Approximately three months after termination, Defendant Christensen incorporated Defendant Midwest as his own Iowa business to provide the same type of services as Plaintiff in the Iowa region.  After starting his business, Defendant Christensen received calls from a number of Plaintiff's Iowa customers, which resulted in at least 11 of Plaintiffs customers entering into contracts with Defendants, prompting this action.

## II.  Analysis

Plaintiff brings this suit claiming breach of contract against Defendant Christensen in that he competed with and solicited customers from Plaintiff.  In addition, Plaintiff asserts that both defendants engaged in unfair competition and have tortiously interfered with Plaintiff's existing

---

[1]Defendant Christensen began employment as an Area Manager with Plaintiff in 1981 when he was a resident of Kansas City.  As a condition of employment, Defendant Christensen executed an employment contract in 1981 that contained a non-compete provision similar to that in the 1987 Contract.  Defendant Christensen moved to Iowa in December 1981 to operate Plaintiff's Iowa office and manage its Iowa customers.

contracts with it customers and with its prospective business advantage.  Defendant Midwest moves for dismissal based on lack of personal jurisdiction, or in the alternative, joins with Defendant Christensen in moving the Court for a change of venue to the United States District Court for the Southern District of Iowa.

## A.  Personal Jurisdiction

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that personal jurisdiction over the defendant is appropriate.[2]  In a pre-trial motion to dismiss, such as when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[3]  Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[4]  However, when personal jurisdiction is assessed in an evidentiary hearing or at trial, plaintiff must generally establish by a preponderance of the evidence that personal jurisdiction exists.[5]

Neither Plaintiff nor Defendants challenge subject matter jurisdiction of this Court, as the Plaintiff is a Kansas resident, both Defendants are residents of Iowa, and Plaintiff alleges an amount in controversy exceeding $75,000.  The Court, therefore, finds it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  As this is a diversity of citizenship

---

[2]*Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (2000) (citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[3]*Id.*

[4]*Id.* at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))).

[5]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008).

action, personal jurisdiction is determined by the law of the forum state, and must comport to that state's long-arm statute and ensure that constitutional due process is satisfied.[6]  As Defendant Christensen does not challenge personal jurisdiction, the Court finds jurisdiction is proper with respect to him, and limits its analysis to Defendant Midwest.

## 1. Kansas Long-Arm Statute

The Kansas long-arm statute provides in part, that:

> Any person, whether or not a citizen or resident of this state, who *in person or through an agent or instrumentality* does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>> Transaction of any business within this state;
>> commission of a tortious act within this state; or
>> entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
>
> (2)   A person may be considered to have submitted to the jurisdiction of the courts of this state for a cause of action which did not arise in this state if substantial, continuous and systematic contact with this state is established that would support jurisdiction consistent with the constitutions of the United States and of this state.[7]

The "agent or instrumentality" language of the Kansas long-arm has been interpreted broadly so as to include those non-resident defendants who control or direct acts of the agent from which the claim arises, or who "purposefully seek[] and foreseeably benefit[] from [an] active relationship with another entity that has transacted business in the forum that gives rise to

---

[6]*Thermal Components*, 98 F. Supp. 2d at 1227 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994)).  "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," separate long-arm and due process analysis is duplicative and unnecessary, and therefore, a court may proceed directly to the constitutional due process analysis. *Federated Rural*, 17 F.3d at 1305.  The Court, however, will nevertheless evaluate Defendants conduct to ensure that it falls within the scope of Kansas' long-arm statute.

[7]K.S.A. § 60-308(b)(1)(A)-(B), (E), (b)(2) (emphasis added).

[the] claim."[8]  Plaintiff alleges that personal jurisdiction is proper over Defendant Midwest because it knowingly and purposefully acted and benefitted by tortiously interfering with Plaintiff's contracts with its current customers, and by inducing its sole owner and agent, Defendant Christensen, to violate his non-compete agreement while knowing such agreement existed.  Plaintiff further asserts that Defendant Midwest's conduct resulted in it incurring financial loss at its principal place of business, which is located in Kansas.

The Court agrees that Defendant Midwest is subject to jurisdiction under the tortious act provision of Kansas' long-arm.  Although Defendant Midwest argues that Plaintiff's injury was to its office in Iowa, Plaintiff's injury, alleged to be caused by Defendant Midwest's conduct, was suffered by Plaintiff at its principal place of business is Kansas.[9]  Accordingly, for purposes of the Kansas long-arm, Plaintiff's injury occurred in Kansas, and therefore, jurisdiction over Defendant Midwest is proper.

## 2. Due Process

Determining that Defendant Midwest's conduct falls within the Kansas long-arm statute, the Court must next determine whether the exercise of jurisdiction offends the constitutional guarantee of due process.  "The 'minimum contacts' standard may be met in one of two ways."[10]  First, a court may exercise specific jurisdiction over a non-resident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation

---

[8]*Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F. Supp. 483, 514 (D. Kan. 1978).

[9]*Thermal Components*, 98 F. Supp. 2d at 1228; *see also Corinthian Mortgage Corp. v. First Security Mortgage Co.*, 716 F. Supp. 527, 529 (D. Kan. 1989) (stating "[u]nder Kansas law, even though a tortfeasor acts outside the state, a tort occurs in Kansas for purposes of long-arm jurisdiction if the act "cause[s] tortious injury to a resident in the state. . . ." (quoting *Wegerer v. First Commodity Corp.*, 744 F.2d 719, 727-28 (10th Cir. 1984)).

[10]*OMI Holdings*, 149 F.3d at 1090.

results from alleged injuries that arise out of or are related to those activities."[11]  Where no nexus exists between the forum-related activity and the injury sustained, the court may nevertheless exercise "general jurisdiction" over the defendant when the defendant's contacts "are so pervasive that personal jurisdiction is conferred by the 'continuous and systematic' nature of the defendant's in-state activities."[12]  Because Plaintiff does not allege that Defendant Midwest has such "continuous and systematic" contacts to subject it to general jurisdiction, the Court addresses specific jurisdiction only.

To exercise specific jurisdiction over a non-resident defendant, the Court must first determine whether the defendant has such "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there."[13]  The Court must then consider whether exercise of jurisdiction is reasonable, such that it does not offend the "traditional notion of fair play and substantial justice."[14]  This inquiry requires the Court to determine "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case."[15]  The reasonableness prong suggests a sliding scale: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of

---

[11]*Id.* at 1091-91 (quoting *Burger King*, 471 U.S. at 472; *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987)).

[12]*Id.*

[13]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[14]*Asahi Metals*, 480 U.S. at 113.

[15]*OMI Holdings*, 149 F.3d at 1091.

[minimum contacts]."[16]

### a. *Minimum Contacts*

The minimum contacts standard requires (1) that the non-resident defendant "purposefully directed" its activities at residents of the forum state, and (2) that the plaintiff's injuries "arise out of" the defendant's forum related activities.[17]  This "purposeful direction" is requried so that the non-resident defendant will not be forced to defend a claim in which its contacts with that non-resident forum are merely "random, fortuitous, or attenuated."[18]

Purposeful direction exists if a defendant engages in (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state.[19]  While the mere foreseeability of causing injury in the forum state, standing alone, is insufficient to warrant the exercise of personal jurisdiction over a defendant, "actions that are performed for the very purpose of having their consequences felt in the forum state are more than sufficient to support a finding of purposeful direction under *Calder*."[20]

Plaintiff argues that defendant Midwest satisfies that minimum contact requirement because it intentionally and knowingly induced and directed Defendant Christensen, its sole

---

[16]*Id.* at 1092 (alteration in original) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994); *accord Burger King*, 471 U.S. at 477.

[17]*Burger King*, 471 U.S. at 472; *Dudnikov*, 514 F.3d at 1071.

[18]*Burger King*, 471 U.S. at 475; *Dudnikov*, 514 F.3d at 1071.

[19]*Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984).

[20]*Id.* at 1078; *Equifax*, 905 F.2d at 1358 (stating that "if a defendant's actions cause foreseeable injuries in another state, it is, 'at the very least, presumptively reasonable for the defendant to be called to account there for such injury.").

owner and agent,[21] to breach his non-compete agreement with Plaintiff, a Kansas resident, by wrongfully interfering with Plaintiff's contracts with current customers - customers that Defendant Christensen previously serviced while employed with Plaintiff, and by directly competing with Plaintiff. Plaintiff asserts that this conduct caused immeasurable injury to its principal office, which is located in Kansas. Plaintiff contends that while it does have an office in Iowa with staff to service its Iowa customers, Defendant Midwest's contractual interference and unfair competition injures its corporate "bottom line" in Kansas.

Conversely, Defendant Midwest asserts the required minimum contacts are lacking. Defendant Midwest argues that any alleged injury occurred to Plaintiff's Iowa business, not its Kansas corporate office. Defendant Midwest further argues that Plaintiff abandoned its customers in Iowa that Defendant Midwest now services. In addition, Defendant Midwest contends that it has never done any business in Kansas, has had no communications with Kansas businesses or customers, does not advertise in Kansas, and has not solicited, nor will it solicit, any of Plaintiff's customers.

Defendant Midwest's arguments are unpersuasive. While the Court at this juncture has no reason to doubt Defendants' assertions that it did not initiate calls to Plaintiff's customers, it nonetheless finds that Defendants' alleged conduct was purposefully directed toward Plaintiff's corporate office, causing it financial injury. Defendant Christensen testified that Plaintiff's Iowa customers contacted him when they did not receive timely bids from Plaintiff. But Defendant Christensen further testified that in Iowa, he was known to those customers as "Chem-Trol."

---

[21]The Court recognizes that Defendant Midwest is a separate legal entity from Defendant Christensen; however, it also notes that as sole owner and agent of Defendant Midwest, any act or decision by Defendant Christensen was an act or decision by Defendant Midwest.

Plaintiff's argument that when the customers actually called Defendant Christensen that they were calling "Chem-Trol," therefore, has merit.  Moreover, when those customers contacted him, Defendant Christensen did not inform them that he was unable to accept their business, but instead accepted their offers to bid on projects that he knew Plaintiff had serviced for years.  If fact, Defendant Christensen testified that he began competing with Plaintiff on behalf of Defendant Midwest with full knowledge that his conduct was contrary to his non-compete agreement, but he did so anyways.  Accordingly, the Court concludes that Defendant Midwest has sufficient minimum contacts with Kansas as a result of its alleged conduct to subject it to the jurisdiction of this Court.

### b. Reasonableness

Having determined that Defendant Midwest has sufficient minimum contacts with the forum, the Court next turns to whether asserting personal jurisdiction would offend "traditional notions of fair play and substantial justice."[22]  This turns on whether it is reasonable for the Court to exercise personal jurisdiction.[23]  As the "sliding scale" suggests, the reasonableness component may have a greater or lesser effect on the outcome of the due process inquiry depending on the extend of a defendant's minimum contacts.[24]  However, when a non-resident defendant has purposefully directed activities toward the forum state, it must "present a compelling case that the presence of some other considerations would render jurisdiction

---

[22]*Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

[23]*OMI Holdings*, 149 F.3d at 1091.

[24]*Id.* at 1091-92.

unreasonable."[25]  In this regard, the Court should consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[26]  If there is a strong showing of these reasonableness factors, jurisdiction may be established even though there are only minor minimum contacts.[27]

Regarding the first factor, Defendant Midwest is an Iowa corporation and is based in Iowa.  Its sole owner, agent, and employee, Defendant Christensen, is also an Iowa resident. Defendants have identified a number of witnesses that also reside in Iowa.[28]  The distance between Defendants' residence and the place of trial in Kansas City, Kansas will obviously impose a burden on Defendants.  However, because "defending a suit in a foreign jurisdiction is not as burdensome as in the past,"[29] the Court finds this factor weighing only slightly in Defendant Midwest's favor.

Regarding the second factor, because a Kansas resident suffered the alleged injury in the State of Kansas, Kansas has a strong interest in adjudicating this dispute.[30]  As previously stated,

---

[25]*Burger King*, 471 U.S. at 477.

[26]*World-Wide Volkswagen*, 444 U.S. at 292.  "The process of resolving potentially conflicting fundamental social policies can usually be accomodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum."  *Burger King*, 471 U.S. at 483, n.26.

[27]*OMI Holdings*, 149 F.3d at 1095.

[28]The Court, however, notes that a majority of Defendants' witnesses have been identified so as to testify to the fact that they first contacted Defendant Christensen and that he did not first contact them.  These witnesses' testimony on that point is legally irrelevant to the issues of this action, and the Court, therefore, gives the location these witnesses no weight in in this factor.

[29]*Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982).

[30]*See Burger King*, 471 U.S. at 483-84.

Defendants' arguments that the injury was suffered by Plaintiff's Iowa office and not by its corporate office in Kansas is unpersuasive.  This factor weighs in favor of Plaintiff.

With respect to the third factor, Plaintiff's interest in receiving convenient and effective relief weighs in favor of jurisdiction in Kansas.  Plaintiff alleges that a number of its important witnesses are in Kansas, along with a number of important documents relating to this action. Litigating this claim in another forum would be burdensome on Plaintiff, as Plaintiff and its employees are based in Kansas.  This factor weighs in favor of Plaintiff.

Concerning the fourth factor, the Court assesses whether Kansas would be the best state in which to litigate this dispute.[31]  The key points to consider when evaluating this factor are (1) the location of witnesses, (2) the location of the wrong underlying the lawsuit, (3) what forum's law applies, and (4) "whether jurisdiction is necessary to prevent piecemeal litigation."[32]  The first consideration favors neither party.  A majority of Plaintiff's witnesses reside in Kansas, and the Defendants' witnesses reside in Iowa.  As previously noted, Defendant Christensen has identified a number of witnesses whose testimony as indicated is legally irrelevant to the issues of this action; however, Defendant Midwest has identified other witnesses who also reside in Iowa.[33]  Thus, this consideration is neutral.  The second consideration weighs slightly in favor of Plaintiff, as the cause of action arose in Kansas.  Kansas courts follow the rule of *lex loci delecti*, or place of injury, to determine where cause of injury occurred in a tort action.[34]  With respect to

---

[31]*OMI Holdings*, 149 F.3d at 1097.

[32]*Id.*

[33]Defendants generally outlined its witnesses' testimony in affidavits to the Court.

[34]*Hawley v. Beech Aircraft Corp.*, 625 F.2d 991, 993 (10th Cir. 1980).

the non-tort allegations, although Defendant Midwest allegedly carried out its wrongful acts with respect to Plaintiff's Iowa customers in Iowa, the "wrong" was to Plaintiff's Kansas corporate offices.  The third consideration weighs in favor of Plaintiff because the alleged injury occurred in Kansas, which suggests that Kansas law would apply.[35]  The last consideration does not favor either party, as the Court finds that the judicial system would be served by litigating the case in either Kansas or Iowa.

With respect to the fifth factor, the Court focuses on whether "the substantive social policy interests of other states or foreign nations" would be affected by exercising jurisdiction in Kansas.[36]  Here, the Court finds that regardless of whether the action is litigated in Kansas or Iowa, neither state's social policy would be adversely affected.  Defendant Midwest argues that the outcome of this case could affect future business affairs in Iowa; however, a similar situation could result in Kansas.  Accordingly, this factor is neutral.

After considering the above factors, the Court finds that exercising personal jurisdiction over Defendant Midwest is reasonable and will not offend "traditional notions of fair play and substantial justice" given the contacts discussed above compared to the relative weights of the reasonableness factors.  Accordingly, the Court finds that exercising personal jurisdiction over Defendant Midwest is reasonable and proper.[37]

---

[35]*Dow Chem. Corp. v. Weevil-Cide Co.*, 630 F. Supp. 125, 127 (D. Kan. 1986) (stating that "[i]n a diversity action . . . a federal court must apply the choice of law rules of the forum state."); *Kan. Mun. Gas Agency v. Vesta Energy Co.*, 840 F. Supp. 814, 822-23 (D. Kan. 1993) (stating that, in a tort case, the law of the state where the injury occurred should be applied).

[36]*OMI Holdings*, 149 F.3d at 1097.

[37]Although the Court finds exercising personal jurisdiction is proper with respect to Defendant Midwest, the question is, in essence, legally irrelevant.  As Defendant Christensen is the sole owner, agent, and employee of Defendant Midwest, any outcome of claims against Defendant Christensen is, in effect, an outcome against Defendant Midwest, which could not continue in business even if Defendant Christensen was enjoined and it was

-12-

**B.  Change of Venue**

Motions to transfer venue are governed by 28 U.S.C. § 1404.  The statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[38]  Whether to transfer venue "lies within the sound discretion of the district court."[39]  The party moving to transfer under § 1404(a), as Defendants have done in this case, bears the burden of showing that the current forum is inconvenient.[40]  "Unless the balance is strong in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."[41]

In evaluating whether to transfer venue, the court should consider (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested

---

not.

[38]28 U.S.C. § 1404(a).

[39]*Peterson v. Moldofsky*, 2008 WL 2859184, at *4 (D. Kan. July 23, 2008) (citing *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998)).

[40]*Thermal Components*, 98 F. Supp. 2d at 1232 (citing *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

[41]*Id.* at 1232 (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).  A party must raise the defense of improper venue in the responsive pleading to be timely.  Fed. R. Civ. P. 12(b).  Defendants indirectly raised improper venue in its Reply to Plaintiff's Response to their Motion for Change of Venue, which Defendants filed on Feb 2, 2009, at 2:28 p.m.  At the time Defendants filed this reply (which was filed by local counsel), the Court was in process of hearing argument from the parties on Defendant Midwest's Motion to Dismiss and both Defendants' Motion to Change Venue.  Defendants failed to raise improper venue at the hearing, nor did they argue to the Court any of the improper venue points addressed in its untimely reply.  Plaintiff had not seen Defendants reply containing improper venue assertions before or during the hearing, and did not have sufficient opportunity to respond during the hearing.  The Court finds Defendants' arguments on improper venue untimely, and accordingly, will only address Defendants' change of venue arguments under 28 U.S.C. § 1404 as presented at hearing an in its pre-hearing filings.

dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.[42]

Defendants argue that the heart of the criteria for change of venue is the inconveniences to the parties and witnesses and the interests of justice. Defendants once again explain that they estimate at least 23 witnesses to have important information regarding the claims, all of which are located in Iowa and out of the control of the Court's subpoena power. In addition, Defendants contend that the ends of justice will be met by transfer because the action arose in Iowa and the witnesses identified are representative of the community and have an interest in the outcome of this litigation. Further, Defendants argue that an Iowa jury would be more familiar with Iowa geography, demographics, and local business customs. Finally, Defendants argues that because this action impacts Defendants' Iowa business, Iowa public interest favors transfer.

Plaintiff counters by arguing that it also has a number of witnesses in Kansas, and requiring them to travel to Iowa would also be inconvenient. Plaintiff explains that transfer would merely shift the inconveniences from Defendants to Plaintiff, and is therefore not an appropriate reason for transfer. Plaintiff also asserts that a number of documents important to the case are located at its corporate office in Kansas. Lastly, Plaintiff contends that Kansas' interest in the outcome of the litigation is as great, if not greater, than Defendants believe Iowa's interest to be, as Kansas has an interest in insuring that its contracts containing non-competes are upheld to protect Kansas businesses.

The Court concludes that Defendants has not met their burden in demonstrating that the

---

[42]*Chrysler Credit Corp.*, 928 F.2d at 1516.

-14-

current forum is so inconvenient so as to warrant transfer.  The Court is unpersuaded by Defendants' claims, and the Court is not convinced that Defendants will be disproportionately impacted by holding the trial in Kansas City, Kansas, rather than in Iowa.  Modern transportation and communications technology have significantly decreased difficulties with interstate travel, which in turn, has decreased a party's burden in traveling for trial.  Further, the distance between Kansas City and Defendants' residence is not so significant as to outweigh Plaintiff's choice of forum.  In addition, as previously stated, the anticipated testimony for a majority of Defendants' witnesses as proffered in Defendant Christensen's affidavits indicates that their testimony, as now submitted to the Court, is legally irrelevant to the case, and therefore, does not support transfer.  The Court, therefore, finds Plaintiff's choice of venue proper and a transfer to Iowa unwarranted.

IT IS ACCORDINGLY ORDERED that Defendant Midwest Spray Team & Sales, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 10) is hereby denied.

IT IS FURTHER ORDERED that Defendant Midwest Spray Team & Sales, Inc. and Defendant Christensen's joint Motion for Change of Venue (Doc. 14) is hereby denied.

IT IS SO ORDERED.

Dated this 4th day of February, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE